USCA1 Opinion

 

 October 14, 1994 [NOT FOR PUBLICATION] UNITED STATE COURT OF APPEALS UNITED STATE COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 94-1064 KEVIN WATKINS, Petitioner, Appellant, v. PAUL J. DiPAOLO, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Willie J. Davis with whom Marie Elena Saccoccio and Davis, _________________ ______________________ ______ Robinson & White were on brief for petitioner. ________________ Neil S. Tussel, Assistant Attorney General, Criminal Bureau, with ______________ whom Scott Harshbarger, Attorney General, and Elisabeth J. Medvedow, __________________ _____________________ Assistant Attorney General, Criminal Bureau, were on brief for respondent. ____________________ ____________________ Per Curiam. This is a petition for habeas corpus __________ by Kevin Watkins, hereinafter defendant, who is serving a sentence for rape imposed following his conviction in the Massachusetts Superior Court. The case is properly here, his state appeal having been taken and denied. Commonwealth v. ____________ Watkins, 33 Mass. App. 7, review denied, 413 Mass. 1105 _______ ______________ (1992). At the same time, of course, we confine ourselves to the case there presented, and presented below. Rose v. ____ Lundy, 455 U.S. 509, 518-19 (1982); Nadworny v. Fair, 872 _____ ________ ____ F.2d 1093, 1096 (1st Cir. 1989). The principal issue is somewhat unusual, at least until recently. Defendant and the victim were student friends who engaged in sex, and then broke up. Before the break-up, defendant had made a video tape, and thereafter the victim asked for it. After some negotiations, defendant agreed to sell it to her for $10. She came to his apartment for that purpose and was, allegedly, raped, naturally and "unnaturally" (orally). Mass. Gen. L. c. 271, 39. There followed two indictments in customary form,1 identically worded, and hence failing to designate the particular act. Both were tried together, without identification; nor did the jury ask. Defendant did not complain. ____________________ 1. Mass. G. L. c. 277, 79. See Commonwealth v. Hrycenko, ___ ____________ ________ 417 Mass. 309, 313, 630 N.E.2d 258, 261 (1994). -2- This blindman's bluff continued, with the jury finding defendant not guilty on indictment 89-2834 and guilty on 89-2835. Defendant did not ask the court to make inquiry when the jury returned, and the verdicts were recorded, still blind. Although it seems reasonable to assume, where the evidence of the two acts had been introduced chronologically, that the jury followed the same pattern, we agree with defendant that this is not inescapably so. However, we cannot agree that this means that the petit jury could not know if "it was . . . deliberating on the same conduct in the mind of the grand jury in issuing the indictments." The grand jury found probable cause for both charges, and, therefore, necessarily for the one the petit jury picked. Defendant concedes that he had full notice of the charges, and adequate opportunity to prepare and defend. "He simply did not have notice as to which indictment pertained to which activity. Ordinarily, the indictments simply _____________________________________ charging 'rape' would have been sufficient. But an ambiguity __________________________________________ arose when the jury acquitted on one and convicted on the other. It was only at this time that the sufficiency of the indictments was called into question." (Defendant's Memorandum to district court; emphasis supplied). No ambiguity "arose" upon the verdicts; if lack of specificity because of special circumstance troubled defendant, he had always been free to seek particulars, Commonwealth v. ____________ -3- Hrycenko, n.1, ante; Mass. R. Crim. P. 13(b)(1). And how was ________ ____ ignorance prejudicial? Defendant's complaint really comes down to his claim of inability, in the future, to plead double jeopardy. This claim is exactly answered by Hrycenko, which defendant ________ cites. It is irrelevant if Hrycenko may be bad federal law - ________ - which we would not think. As only state crimes are involved, the contention is frivolous; he is necessarily state protected. Affirmed. ________ -4-